UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE M. LEE, | ) |
| | ) |
| Plaintiff, | ) No. 4:18-CV-2099 RLW |
| | ) |
| v. | ) |
| | ) |
| MALLINCKRODT ENTERPRISES, LLC, | ) |
| d/b/a MALLINCKRODT PHARMA, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's Motion for Summary Judgment (ECF No. 22). This matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Lawrence M. Lee ("Lee") worked as a security monitor for Defendant Mallinckrodt Enterprises, LLC d/b/a Mallinckrodt Pharma, LLC (formerly Covidien; hereinafter "Mallinckrodt") at the Saint Louis Plant ("STLP"). (Statement of Uncontroverted Material Facts in Support of Defendant's Motion for Summary Judgment ("DSUMF"), ECF No. 24, ¶24).[1] As a security monitor, one of Lee's job duties was to make sure the gates at his assigned building were secured and locked to prevent diversion of controlled substances and certain chemicals. (DSUMF, ¶3). On October 30, 2017, a controlled substance from Building 97 needed to be moved to

---

[1] Lee admitted 35 out of 37 of Defendant's Statements of Uncontroverted Material Facts in Support of its Motion for Summary Judgment. (ECF No 25 at 2, n.1). As for the remaining two material facts, Plaintiff states he "cannot admit or deny the allegations...for the reason that Plaintiff does not have personal knowledge as to what his managers and Human Resources 'believed' as this would be speculative" (Pl. Resp. to Def. Facts ¶¶ 17-18). Therefore, the Court finds the facts are not in dispute.

Building 5 at the STLP. (DSUMF, ¶4). Lee (the security monitor), Arnetter Keyes-Hodges (the security officer), Virgil Hoskin (material handler), and Elvis Mullins (lead operator) all participated in the move. (DSUMF, ¶5). Lee is Caucasian, and Keyes-Hodges, Hoskin, and Mullins are all African-American. (DSUMF, ¶¶6-9).

As the security monitor, Lee was responsible for opening and closing the gate to Building 97 and then riding in the armored car with the security officer to Building 5 to hand the paperwork to the person receiving the product. (DSUMF, ¶13). Lee, however, left the gate open. Lee claimed he thought Dale Hagan (Building 97 Production Manager) was behind Lee, and Hagan would close the gate. Hagan, however, did not come out to close and lock the gate, and Building 97 was left unsecured.

After an investigation led by Tim Heppermann (the Director of Security and Lee's supervisor), it was determined that Lee left the gate open to Building 97 during the product move. (DSUMF, ¶¶15-16). Heppermann recommended Lee's employment be terminated for leaving a complex unsecure. (DSUMF, ¶19). Heppermann's recommendation was approved by Human Resources and Heppermann's supervisor, John Gillies, who is Caucasian. (DSUMF, ¶¶20-21).

In this action, Lee alleges a race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*, against Mallinckrodt. Lee contends Mallinckrodt discriminated against him based upon his race when he was discharged on November 7, 2017 because the other employees (the lead operator, material handler, and security officer) involved in the product move are African-Americans and were not disciplined.

### A. Standard of Review for Motion for Summary Judgment

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

**B. Discussion**

"A prima facie case of discrimination requires that the plaintiff '(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an

adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination'" *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015)(quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)). Title VII discrimination claims typically utilize a burden-shifting analysis:

> Historically, how courts analyze Title VII discrimination claims has depended on whether a plaintiff has presented direct or indirect evidence of discrimination. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 269–70, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Under this dichotomy, if a plaintiff presents direct evidence of discrimination, then courts must proceed under the mixed-motive standard. *See Mohr v. Dustrol,* 306 F.3d 636, 639–40 (8th Cir.2002). Once the plaintiff presents direct evidence that discrimination was a motivating factor in the employment decision, the burden shifts to the employer to prove that it would have reached the same decision in the absence of discrimination. *See Gagnon v. Sprint Corp.,* 284 F.3d 839, 847–48 (8th Cir.2002).
>
> On the other hand, if a plaintiff presents indirect evidence of discrimination, then courts must proceed under the single-motive analysis articulated in *McDonnell Douglas. See id.* Under this standard, the plaintiff must first establish a prima facie case of discrimination. *See id.* Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a non-discriminatory reason for the employment action. *See id.* If the employer identifies such a reason, then the burden shifts back to the plaintiff to present sufficient evidence that the proffered reasons was really a pretext for intentional discrimination. *See id.* The burden of persuasion always remains with the plaintiff. *See id.*

*Klyuch v. Freightmasters, Inc.*, 393 F. Supp. 2d 788, 792–93 (D. Minn. 2005). In a reverse-racism case, the plaintiff must also show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir.2004); *Schaffhauser*, 794 F.3d at 903.

Here, Lee argues only indirect, not direct, evidence of discrimination. "Unlike direct evidence, indirect evidence does not directly point to the existence of a discriminatory motive, but nonetheless permits the trier of fact to infer discrimination." *Klyuch v. Freightmasters, Inc.*, 393 F. Supp. 2d 788, 794 (D. Minn. 2005). For example, "[p]roof that the [employer's] explanation is

unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 134, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Because he fails to present direct evidence of discrimination,[2] Lee must meet the standard articulated in *McDonnell Douglas* for indirect evidence to prevail on his Title VII claim. *Klyuch*, 393 F. Supp. 2d at 794.[3]

Lee admits that he did not close the gate to Building 97, which was one of his job duties. (ECF No. 25 at 3). Thus, Mallinckrodt has provided a legitimate, nondiscriminatory basis for terminating Lee. Because Mallinckrodt articulates a legitimate, nondiscriminatory reason for terminating Lee, the burden shifts to Lee "to show that the 'proffered justification is merely a pretext for discrimination.'" *Schaffhauser*, 794 F.3d at 904 (citing *Davis*, 685 F.3d at 681). Lee claims he can show that Mallinckrodt's justification for his termination was merely pretext for discrimination. (ECF No. 25 at 14). "There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext." *Torgerson*, 643 F.3d at 1047; *Schaffhauser*, 794 F.3d at 904. "A plaintiff may show that the employer's explanation is unworthy of credence ... because it has no basis in fact. Alternatively, a plaintiff may show pretext by persuading the court that a [prohibited] reason more likely motivated the employer." *Id.* (alterations in original) (citations omitted) (internal quotation marks omitted). "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).

---

[2] *See* ECF No. 25 at 12 ("Plaintiff acknowledges that he lacks direct evidence of discrimination.").
[3] Lee likewise admits that the burden-shifting framework of *McDonnel Douglas*, 411 U.S. 792 (1973) applies.

In an attempt to establish pretext, Lee complains that the three other employees, all African-American, involved in the product move on October 30, 2017, were not disciplined. (ECF No. 25 at 3). "While [Lee] agrees that he was at fault [for failing to lock the gate at Building 97], he asserts that he was dealt with too harshly, and that Arnetter Hodges, by driving away from the gate while it was left open, should have been terminated because she had just as much responsibility for the gate at Building 97 being closed as Plaintiff did." (ECF No. 25 at 8 (citing Plaintiff's Additional Statement of Undisputed Material Facts ("PASUMF"), ¶27).

Initially, the Court holds that Lee's purported justification for not closing the gate fails to create an issue of fact that would cause this Court to deny Mallinckrodt's motion for summary jugment. As stated, Lee asserts Mallinckrodt wrongly disciplined him alone, instead of all of the employees involved in the product move. That is, Lee seeks to invoke the Court's authority not to correct a discriminatory wrong, but to challenge Mallinckrodt's decisions regarding whom to discipline and to what extent. "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Wilking v. County of Ramsey,* 153 F.3d 869, 873 (8th Cir.1998); *Torlowei v. Target,* 401 F.3d 933, 935 (8th Cir. 2005). The Court cannot second-guess Mallinckrodt's decision to terminate Lee for failing to perform his job duties simply because Lee had "reasons" for leaving the gate open. Therefore, the Court holds that Lee has not established pretext based upon his belief that he had reasons for leaving open the gate.

Even if the Court could determine that Lee provided valid reasons for leaving the gate open, the Court holds that Lee's claim fails as a matter of law because he has not identified a similarly-situated employee who was treated more favorably. As discussed, one method of demonstrating pretext is to show that the plaintiff was treated differently than similarly-situated employees of another race. The "similarly situated co-worker inquiry is a search for a substantially

similar employee, not for a clone." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010). Lee must prove only that the other employees were "similarly situated in all relevant respects." *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir.1998) (quoting *Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994)). "To demonstrate that they are 'similarly situated'" he 'need only establish that he or she was treated differently than other employees whose violations were of *comparable seriousness.*'" *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013) (citing *Lynn*, 160 F.3d at 488). Lee maintains he can show Mallinckrodt treated similarly-situated African-American employees "(at a minimum, Arnetter Hodges, and probably also Elvis Mullins and Virgil Hoskin) in a disparate manner, in that they were not only not terminated but that they received absolutely no discipline whatsoever, not even a warning or a reprimand." (ECF No. 25 at 14). That is, Lee argues that Mallinckrodt terminated Lee but did not discipline the African-American employees involved in the moved based upon each employee's race.

The Court holds undisputed facts demonstrate that Lee is not similarly-situated in all relevant respects to Hoskin, Mullins, or Keys-Hodges. In his Opposition, Lee identifies Elvis Mullins and Virgil Hoskins as possible comparators, but these employees also are not substantially similar. In his response to Defendant's Statement of Uncontroverted Material Facts, Lee admits all of the facts that confirm that these employees are not substantially similar. *See* ECF No. 27. Mullins and Hoskin were not in security, not supervised by Tim Hepperman, not subject to the same job standards as Lee, and not responsible for closing and locking the gate as part of the product move. (DSUMF, ¶¶10-11, 27-28). Hoskin, the material handler responsible for picking up and delivering the product with the forklift, was not in security and did not report to Tim Heppermann. (DSUMF, ¶¶11, 17, 28). Likewise, Mullins, the lead operator was responsible for

moving the product from inside Building 97 to an area inside the locked gate at Building 97. Mullins not in security and did not report to Heppermann. (DSUMF, ¶¶10, 17, 27). Neither Hoskin or Mullins was responsible for closing and locking the game. (DSUMF, ¶¶29-30). Lee provided no information to convince the Court that Mullins and Hoskins are similarly situated to Lee, other than that they are Mallinckrodt employees, which is woefully insufficient at the summary judgment stage.

Further, the Court holds that Keys-Hodges, although also an employee in the security department, was not similarly-situated to Lee in all relevant respects. *See also Lidge–Myrtil v. Deere & Co.,* 49 F.3d 1308, 1311 (8th Cir.1995) ("Although [an employee] does possess the experience and some of the other qualities essential for success in the position, this does not suffice to raise an inference that [the employer's] stated rationale for giving the position to another is pretextual"); *Pierce v. Marsh,* 859 F.2d 601, 604 (8th Cir.1988) ("The mere existence of comparable qualifications between two applicants ... alone does not raise an inference of ... discrimination."). Keys-Hodges' security officer job was substantially different than Lee's security monitor position, even when not engaged in a product move. (ECF No. 23 at 14-15). As Lee admits, security officers are armed, highly trained, and make more money than security monitors. (ECF No. 25 at 7). As a security monitor, Lee's job was to monitor entry door and clothes change facilities for the Controlled Substance Buildings (Def. Ex. 2). To do this, Lee, among other things, sat at a desk by the entry door to Building 97 to monitor who entered and exited the building. He also coordinated security alarm repairs, arranged and escorted transfers of controlled substances between buildings, maintained door list and entry records for buildings, maintained the alarm system daily, and ensured that fences and gates on and around the building were locked and secure (Def. Facts ¶ 3; Def. Exs. 2-3). On the other hand, Keys-Hodges, as the security officer, did not sit

at a desk to monitor entry door and clothes change facilities (Def. Facts ¶ 12; Def. Ex. G). Instead, her security duties involved preventing diversion of Schedule I through V pharmaceutical grade narcotics and line one precursor chemicals, protecting Research and Development buildings as well as analytical labs, handling incoming telephone calls including sensitive issues and situations, assisting in emergency situations and serving as a point of contact and coordinating with police, fire, and other first responders, controlling plant access, and controlling access of all materials entering and exiting the plant to include the escorting of inbound and outbound shipment of raw narcotic materials (Def. Ex. G). In addition, Lee and Keys-Hodges had different job duties during the product move. Keys-Hodges was responsible for driving the armored car while following the product being transported on the forklift. In contrast, Lee was responsible for maintaining a line of sight with the product. (DSUMF, ¶12). Lee's responsibility during the product move was to open and close the gate to Building 97 and then ride in the armored car with the security officer to Building 5 to had the paperwork to the person receiving the paperwork. (DSUMF, ¶13). The Court holds that Keys-Hodges and Lee had substantially different job duties and responsibilities. Therefore, the Court holds that Keys-Hodges is not similarly situated as a matter of law.

Furthermore, Lee's admissions to Mallinckrodt's facts bar his claim for discrimination. That is, nothing in the record creates a question about whether the decision makers had a good faith belief that Lee left the gate open and that closing the gate was Lee's job duty. *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 612 (8th Cir. 2014) ("Nothing in the record creates a question whether the decision makers had a good faith belief Johnson had left his post early by leaving the site before 8:00 a.m."). Lee, however, claims he had legitimate reasons for not closing the gate to Building 97. (ECF No. 25 at 3-4). Lee contends that Keys-Hodges had overall responsibility for the security of the site. In support of this argument, Lee cites the security officer

job description: "This position is responsible for ensuring the highest level of security and safety of the company personnel, property, information, and the reputation of Mallinckrodt Pharmaceuticals St. Louis Site." (ECF No. 25 at 8-9 (citing PASUMF, ¶30)). Lee, however, has admitted that Lee's managers and Human Resources believed Keys-Hodges was not responsible for closing and locking the gate during the product move. (DUMF, ¶¶17-18). Given that Lee has admitted that HR believed Lee was responsible for closing the gate at Building 97, Keys-Hodges' job duties and responsibility for the security at the STLP is not material to whether Mallinckrodt's reason for firing him is pretext for race discrimination. Lee cannot proffer evidence that Mallinckrodt intended to discriminate against Lee and not just enforce a company policy. Therefore, Lee has not demonstrated pretext and his claim fails as a matter of law.

Finally, the Court holds that Lee has not demonstrated "background circumstances" to support a reverse-race discrimination claim. (ECF No. 25 at 7 (citing *Schaffhauser*, 794 F.3d at 903)). The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Qualley v. Clo-Tex Int'l, Inc.*, 212 F.3d 1123, 1128 (8th Cir. 2000) ("Adjudicative facts are 'facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses.'"); *see also U.S. v. Gould*, 536 F.2d 216, 219 (8th Cir.1976) (stating that adjudicative facts concern "who did what, where, when, how and with what motive or intent.") (quoting 2 Kenneth Davis, Administrative Law Treatise § 15.03 at 353 (1958)). Lee contends that the Court can take judicial notice of the "Ferguson effect" whereby police allegedly "have been less vigorous in the enforcement of the law in situations that might lead to a backlash by African[-

]Americans." (ECF No. 25 at 14-15 (citing https://en.wikipedia.org/wiki/ferguson_effect)).[4] Lee admits that the purported "Ferguson effect" originates with police enforcement, but he contends that its principles can be extrapolated to the employer-employee relationship, as in this case. *Id.* Lee asks the Court to take judicial notice of the "Ferguson effect" as his explanation for Mallinckrodt's allegedly discriminatory firing of him and imposing no discipline on his African-American colleagues. (ECF No. 25 at 14 (citing https://en.wikipedia.org/wiki/Ferguson_effect)).

The Court, however, cannot take judicial notice of an idea such as the "Ferguson effect" based upon a Wikipedia article. *See* https://en.wikipedia.org/wiki/Ferguson_effect ("The Ferguson effect is the idea that increased distrust of police following the 2014 shooting of Michael Brown in Ferguson, Missouri has led to an increased crime rate (or sometimes increased murder rate) in major U.S. cities"). First, an "idea" is not an adjudicative fact upon which the Court can take judicial notice. Nor has Lee provided any evidence or support for his conclusory application of the "Ferguson effect" to the private sector. Second, Wikipedia is not a source "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). *See Badasa v. Mukasey*, 540 F.3d 909, 910 (8th Cir. 2008) (citing *Campbell v. Sec'y of Health and Human Servs.*, 69 Fed.Cl. 775, 781 (Fed.Cl.2006) (observing that a review of the Wikipedia website "reveals a pervasive and, for our purposes, disturbing set of disclaimers"); R. Jason Richards, *Courting Wikipedia,* 44 Trial 62 (Apr.2008) ("Since when did a Web site that any Internet surfer can edit become an authoritative source by which law students could write passing papers, experts could provide credible testimony, lawyers could craft legal arguments, and judges could issue precedents?"). Given that the Court

---

[4] The "Ferguson effect" references the 2014 shooting and death of an unarmed African-American youth, Michael Brown, by police in Ferguson, Missouri, which caused protests and other calls to action regarding police relations with citizens, particularly African-Americans. Lee notes that Ferguson, Missouri is "within a matter of miles" from where Lee was employed by Defendant in North St. Louis. (ECF Nos. 25 at 14-15).

cannot consider the alleged "Ferguson effect" to explain Mallinckrodt's decision not to discipline African-American employees and to fire Lee, the Court holds Lee has not provided the requisite background circumstances to support his reverse discrimination claim and, therefore, it must fail as a matter of law.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 22). is **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 27th day of April, 2020.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**